IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AARON SHAW, ET AL., | ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | |
| | ) | 1-08-CV-2819 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Issues Presented:**

Issue 1:   Bank of America ("BOA" or "the Bank") reclassified its Field Examiners from exempt from overtime to overtime eligible in October 2007. Employers claiming an exemption from the maximum hours requirements of the FLSA must prove that the employee clearly and unmistakably falls into the exemption by clear and affirmative evidence. Can BOA meet its high burden when BOA admits that the job duties are overtime eligible under the FLSA, explains why the positions are overtime eligible, and admits that the job duties have not changed?

<u>Issue 2</u>:   BOA claims that Field Examiners were exempt professionals prior to October 2007.   Bona fide professionals include those professions which have a recognized status and which are based on the acquirement of professional knowledge through prolonged study, requiring at least a college degree.  Where no particular degree is a requirement of the job and some Field Examiners do not have college degrees, can BOA prove with clear and affirmative evidence that field examiners are bona fide professionals?

<u>Issue  3</u>:   BOA claims that Field Examiners are exempt under the administrative exemption.   BOA must prove that Shaw's primary duties related to the management or general business operations of BOA **and** that his primary duty includes the "exercise of discretion and independent judgment" **and** that it is with "respect to matters of significance."   Applying well-established techniques, procedures and standards does not qualify.  Where the Field Examiners performed work on the Bank's product – asset based loans – and the Bank admits that the work was performed using prescribed, well-established procedures, can BOA prove with clear, affirmative and undisputed evidence that Field Examiners are administratively exempt?

## I.  INTRODUCTION

In October 2007, BOA notified Shaw that after a review of his duties and responsibilities, the Bank determined that his day-to-day responsibilities made him overtime eligible under the FLSA, but that he was not entitled to any back wages.

Through its designated representatives, the corporation admitted that the duties and responsibilities of Field Examiners were no different after October 2007 than they were before October 2007.[1]  (30(b)(6) Deposition/Laura Hall, p. 216).   The corporation further admitted that Field Examiners' work and the manner in which it was performed made Field Examiners eligible for overtime under the FLSA.  Specifically, Field Examiners are non-exempt because they

> . . .follow prescribed procedures, they're assigned to which areas or which companies they're doing their exam work, they have specific procedures they follow, a specified scope of work of what they're evaluating and what they're reviewing, they gather information based on that review.  From the information that they gather they summarize it in a report and might make a recommendation.  The decision is reached by another party.

---

[1] BOA has testified in this litigation through corporate representatives designated and prepared to testify on behalf of the corporation and bind the corporation pursuant to Fed.R.Civ.P. Rule 30(b)(6).  Much of the corporate testimony contradicts the Bank's assertions to the Court to support this summary judgment motion.

(Deposition of Bank of America, by Susan Moshier, 30(b)(6) Witness, p. 82). Moreover, the Bank admitted that the professional exemption does not apply because the qualification required in the position is previous experience in similar work – and no particular degree is required.  It is "not required – but helpful – to have some understanding of accounting".  Id. at 122.

Even though BOA has told its Field Examiners that they are not exempt from overtime under the FLSA, paid their Field Examiners overtime since October 2007, and admitted in this litigation that the corporation's opinion is that Field Examiners are eligible for overtime under the FLSA, BOA moves for summary judgment claiming that as a matter of law reasonable minds could only come to one conclusion: that Field Examiners are exempt from overtime.

**II.    STATEMENT OF FACTS**

Plaintiff incorporates into this brief his Statement of Material Facts, including facts listed in response to the Defendant's Statement of Material Facts.

### III.   STANDARD OF REVIEW

The burden of proof is on the employer to show that a FLSA exemption applies, and an exemption applies only to those employees who fall clearly and unmistakably within its terms and spirit.  Gregory v. First Title of America, Inc., 555 F.2d 1300, 1302 (11th Cir. 2009).  The employer bears the burden of proof by clear and affirmative evidence, and an exemption must be narrowly construed. Gregory, 555 F.2d at 1302; see also Atlanta Prof's Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991).

### IV.   ARGUMENTS AND CITATIONS TO LEGAL AUTHORITIES

Bank of America cannot prove that as a matter of law reasonable minds could only conclude that Field Examiners were not entitled to overtime when the Bank itself admits that Field Examiners' current job duties make them eligible for overtime and the job duties have not changed.  At summary judgment, the party with the burden of proof must present specific concrete facts in the record to support its claim.  Mauter v. Hardy Corp., 825 F.2d 1554 (11th Cir. 1987). Summary judgment is not appropriate where evidence is in conflict.  Id.  It is the movant's burden to present to the Court the *undisputed* facts and evidence in the case.  In the present case, however, the Bank filed for summary judgment and presented the Court with evidence that it knew was disputed – because it was

disputed by the movant itself – and requested that this Court rule on and grant an early summary judgment.

The Bank is bound by its corporate representatives' admissions in this case which have provided a clear explanation as to why the Field Examiners are entitled to back wages. Yet, despite its binding admissions to the contrary, Defendant continues to pursue summary judgment claiming that the Field Examiners are exempt. Accordingly, Plaintiff Shaw will address each of the arguments asserted by the Bank.

      **A.**    **<u>Defendant Cannot Prove that the Field Examiner Position Clearly and Unmistakably Is Covered Under the Professional Exemption Because The Field Examiner Position Does Have A Requirement for a Standard Prerequisite of a College Degree in a Specialized Type of Learning</u>**

To prove that Field Examiners are exempt professionals, Bank of America must prove that the Field Examiner has as a primary duty the performance of work <u>requiring</u> knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction (the "learned professional"). 29 C.F.R. § 541.300 (emphasis added).

The learned professional exemption is not available for occupations that "customarily may be performed with only the general knowledge acquired by an academic degree in any field or with training in the performance of routine mental,

manual, mechanical or physical processes." 29 C.F.R. § 541.301(d). The duties of that position must call for a person who is in a learned profession "with at least a college degree in a specialized type of learning. . . . A college degree of a generalized type does not meet that requirement." (citing former regulation)); *see also* 69 Fed. Reg. 22150 (April 23, 2004) (noting intent when promulgating new regulations that jobs that "require only a four-year degree in any field or a two-year degree as a standard prerequisite for entrance into the field . . . do not qualify the learned professional exemption."); Dybach v. Florida Dept. of Corrections, 942 F. 2d 1562, 1565 (11th Cir. 1991). The type of advanced knowledge contemplated cannot be attained at the high school level. 29 C.F.R. § 541.301(3)(b).

The testimonial and documentary evidence is clear. The primary duty of the field examiner position did not "require" any course of specialized instruction. Someone without an accounting degree can perform the job. (30(b)(6) Deposition/ Laura Hall, p. 38). Field examiners need only obtain a college degree, in any field, to be hired by BOA. (Belluso Dep., pp. 38-40.) Some field examiners have no college degree. (Shaw Dep., pp. 220-21). The Bank's job posting explains that certain college degrees are *preferred*. It does not provide that any particular degree is required. Nor is a background in accounting even required. (30(b)(6) Deposition/Susan Moshier, p. 122).

It is of no consequence that Shaw, or any other Field Examiner, obtained their degree in accounting or finance.   The determinative factor in analyzing whether an employee position requires advanced knowledge is the job requirements rather than the education the employee received.   Dybach, 942 F.2d at 1565.   The Bank required a college degree to be a Field Examiner; degrees in finance, accounting, or other business fields were preferred, but not required.   That a certain degree may be "helpful" or "desired" for a position does not meet the narrowly construed professional exemption.   Consequently, the Field Examiner position does not qualify under the professional exemption.[2]

Nor does the exemption apply to "occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." 29 C.F.R. § 541.301(d).   The Field Exam process is not taught in academic study.   (30(b)(6) Deposition/Laura Hall, p. 54).   After completing a college degree, an individual would not know how to perform the functions of the position.  (30(b)(6) Deposition/Laura Hall, p. 53).  This is because the overall field examiner process "is not taught in an academic environment, it's taught on the job."  (Id., p. 54).   Field Examiners acquire their skill from experience in auditing, and training by co-workers and managers on-the-job.

[2] Although Shaw gained his CPA license during his tenure at the Bank, that license was not a requirement of the position.  (Hall Dep., p. 55; Mercier Dep., p. 29).

(30(b)(6) Deposition/Laura Hall, p. 47; Belluso Dep., pp. 50-51).  Further evidence that the Field Examiners acquired their skill by experience is found in the Bank's own job description which requires – not an academic degree – but prior specific experience.

The cases cited by Defendant in support of its argument that Plaintiff's position fell into the professional exemption further clarify that plaintiff was not a bona fide exempt professional.   First, Defendant cites Corrigan v. United States, 68 Fed. Cl. 589, 595 (Fed. Cl. 2005) to support its argument that Shaw's position fell within the professional exemption.   What the Bank fails to explain to the Court, however, is that Corrigan was decided under the professional exemption applicable to only federal agencies – 5 C.F.R. § 551.207, which has completely different requirements than the FLSA exemption at issue here.

Then, Defendant directs this Court to analogize between the facts of this case and Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 575 (S.D.N.Y 2004) where the plaintiff "was licensed by the State of New York [as a CPA]. He represented clients before the United States Internal Revenue Service, gave clients professional advice regarding tax and accounting matters, prepared tax returns, conducted and issued opinions on certified audits, performed review and compilation engagements, and responded to tax correspondence from

state and federal agencies." The plaintiff in <u>Galasso</u> was a licensed CPA, indisputably the type of professional that the law was meant to exempt, and indisputably distinguishable from the Field Examiner position.

Defendant also cites to <u>Piscione v. Ernst & Young, L.L.P.</u>, 171 F.3d 527 (7th Cir. 1999), where the plaintiff had earned his actuarial certificate and relied on his actuarial education to perform his job duties as a defined benefits consultant for Ernst & Young, on which basis the court ruled that his job required advanced knowledge. <u>Id.</u> at 545. There is no analogy between a licensed actuary and a field examiner given the difference in education, licensing, and job duties for the position. Moreover, the court ruled the plaintiff had advanced knowledge because he exercised discretion with regard to the analysis of data, identified problems with client accounts, and communicated solutions to these clients with little supervision. Even if what Shaw did during a Field Examination could be appropriately called "analyzing data," the Bank admitted that Shaw did not identify problems in the clients' accounts, nor was he advising clients on how to resolve them. (30(b)(6) Deposition/Laura Hall Dep., pp. 173-174). In fact, Field Examiners are "not really doing anything for the customer." (30(b)(6) Deposition/Laura Hall, p. 174).

The Bank cannot prove as a matter of law that a position that is able to be performed by high school graduates and does not require any particular degree or

any academic training to perform the position clearly and unmistakably meets the professional exemption, and this Court should deny Defendant's motion for summary judgment.

**B.**     **Defendant Cannot Prove that the Field Examiner Position Clearly and Unmistakably Is Covered Under the Administrative Exemption**

The general rule for establishing an overtime exemption for an "employee employed in a bona fide administrative capacity," see 29 U.S.C. § 213(a)(1), is that the employee (1) be compensated on a salary or fee basis at a rate of not less than $455 per week; (2) have as a primary duty the performance of "office or non-manual work directly related to the management or general business operations of the employer;" **and** (3) have a primary duty that includes the "exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (emphasis added). All three of these elements must be met to establish exempt status.

**1.**     **Defendant Cannot Prove that the Field Examiner Position Clearly and Unmistakably is Covered Under the Administrative Exemption Because Field Examiners Are Not Performing Work Directly Related to the Management or General Operations of Bank of America**

To establish a primary duty that is "directly related to the management or general business operations," Defendant must prove that the work performed by the employee is "directly related to assisting with the running or servicing of the

business" and not, for example, production work or "selling a product in a retail or service establishment."   29 C.F.R.   §   541.201(a).       In other words, an administrative employee may be exempt from overtime pay because he "engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002).   Examples of jobs "directly related" would include employees in the tax, finance, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, marketing, research, safety and health, personnel management, human resources, employee benefits, labor relations, public relations, computer network, internet and database administration and other similar activities.   29 C.F.R. § 541.201(b).   Work that generates the products or services that the employer provides to the public does not fall within the administrative exemption. Renfro v. Ind. Mich. Power Co., 370 F. 3d 512, 517 (6th Cir. 2004); Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9 (1st Cir. 1997).   In other words, working on the functional areas found in any company is working on operations, while working on the product of the business is typically not.   Production/services typically generate revenue for a company, while operational/functional positions are typically part of a business's overhead expenses.

The "product" of Bank of America Business Capital and the Asset-Based Lending ("ABL") Group is asset-based loans.  (Def.'s Statement of Facts, ¶¶ 1-4; Dendrinos, p. 64; 30(b)(6) Deposition/Laura Hall, p. 216, ln 21-217, ln 15).  Field Examiners work on ABL's main "product", the asset/collateral-based loans.  (30(b)(6) Hall, p. 216, ln 21- p. 217, ln 21).  Customers who purchase the Bank's product – an asset based loan – must also pay the Bank for regular field examinations to allow the Bank to verify the quality and accuracy of the collateral.  The Field Examination costs are ultimately the customer's responsibility as part of the loan.  (30(b)(6) Deposition/Laura Hall, p. 117-121; Dendrinos Dep., p. 83, ln 8-11).  All the time that a Field Examiner spends performing the examinations is billed to the customer and paid by the customer, and the Bank charges more to the customer than it costs the Bank to perform the examination.  (30(b)(6) Deposition/Laura Hall, p. 117, ln 1-5, 118).  Field Examinations are not part of the Bank's operating costs.  (30(b)(6) Deposition/Laura Hall, p. 117, ln 1-5).

Defendant's arguments on this prong are two-fold.  First, Defendant argues that, because the recommendations are used by the Bank in determining whether it will "make a sale" by extending loans to various companies, the work is somehow related to business operations.  This argument simply bolsters Plaintiff's position

that Field Examiners work on the production and sales side of the Bank.  But more disturbing is the Bank's following mischaracterization of the regulations:

> "Employees like FE IIs, who are in the financial industry and perform duties involving the 'collect[ion] and analy[sis] of information regarding customer's assets' are quintessential examples of employees performing 'administrative work.'  <u>See</u> 29 C.F.R. §203(b)[sic].  The undisputed evidence demonstrates that it was Shaw's primary duty to collect and analyze information about customers' assets that served as collateral for ABL Loans."

Defendant's Brief, pp. 15-16.  Plaintiff can only assume that the Bank's failure to cite to the proper regulation, 29 C.F.R. § 541.203(b) rather than 29 C.F.R. § 203(b), was an oversight.  But the Bank's failure to properly inform the Court of the remainder of the multi-prong test for this exemption should not lead the Court astray as to what the law requires.  The appropriately cited regulation, 29 C.F.R. § 541.203(b), titled Administrative Exemption Examples, states in its entirety:

> Employees in the financial services industry generally meet the duties requirements for the employees in the financial services industry "generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; ***and*** marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b) (emphasis added).

Basic legal analysis requires that when a statute has a list of elements and it also includes the word "and" in combination with those elements, *that each and every element is required.* This is even clearer in this particular regulation because the last sentence further explains that the prior portions of the regulation were meant to be read in conjunction with each other, rather than parsed out. Defendant's representation to this Court that an employee who collects and analyzes financial information is a *quintessential administrative employee* is patently untrue, particularly in light of the last sentence of the partially-cited regulation.

Bank of America cannot prove as a matter of law that its Field Examiners are working in the management or operations of the Bank, and this Court should hold that Bank of America Field Examiners are not performing work directly related to the management or general operations of the Bank. Likewise, Defendant's assertion that the Field Examiners are performing work for the Bank's customers must also fail. The Bank has admitted that Field Examiners are not working on behalf of the customers and they are "not really doing anything for the customer." (30(b)(6) Deposition/Laura Hall, p. 174).

**2. Defendant Cannot Prove that the Field Examiner Position Clearly and Unmistakably Is Covered Under the Administrative Exemption Because Field Examiners Do Not Exercise Discretion and Judgment Regarding Matters of Significance.**

Defendant must prove each and every portion of the administrative test. Assuming that the Court finds that the Bank has clearly and unmistakably met its burden under the first prong, the Bank cannot prove that Field Examiners exercise the requisite level of discretion and judgment required nor that those judgments are on matters of significance.

Field Examiners are at the very bottom of the organizational structure of the Asset-Based Lending Group.  (30(b)(6) Deposition/Laura Hall, pp. 98-99; Belluso Dep., pp. 9-11).   Field Examiners do not make decisions on whether to award a loan, to fund a loan, to continue or modify a loan, or to implement recommendations based on the Field Examination.  (30(b)(6) Deposition/Laura Hall, pp. 60, 91, 94, 98-99, 168, 172; Belluso Dep., pp. 9-11).  Field Examiners do not structure financial packages to meet the customer's needs.  (Hall Dep., p. 170). Nor do Field Examiners even make decisions regarding a client relationship.  (Id., pp. 170-71).  Instead, the Bank testified that all day long at work, Field Examiners make various "low-level decisions," such as how to proceed and what to discuss and how to word things with clients.  (Id., p. 187, ln 13-18).  These "low-level

decisions," by the Bank's own testimony, cannot be decisions regarding matters of significance.

Although Defendant fails to set forth specific factors regarding the matters of significance, the Bank continued references to the millions of dollars that lending or continuing to lend appear to be implying that this makes these matters significant.   The regulations specifically address this in 29 C.F.R. § 541.202(f) stating that an "employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." Accordingly, Defendant's continued references to the large dollar amounts that it lends (protected by a borrower's assets) are wholly immaterial.

**3. Because Field Examiners Use Skill in Applying Well-Established Techniques, Procedures or Specific Standards Described in Manuals or Other Sources, the Field Examiners Cannot Be Held to Exercise Discretion and Independent Judgment.**

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established procedures or specific standards described in manuals or other sources.  (29 C.F.R. § 541.202(e)).  The exemptions are not available for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits

to determine the correct response to an inquiry or set of circumstances.  29 C.F.R. § 541.704.

The Bank testified that there are well-established techniques or procedures for the Field Examiner to perform the functions of his job.  (30(b)(6) Deposition/Laura Hall, p. 55).  Field Examiners identify and resolve problems pursuant to established guidelines.  (Id., pp. 155-56).  For a certain set of circumstances that arise, there is a correct response to that particular set of circumstances.  (Id., p. 55).  Manuals, contracts, samples and an entire library of materials are available on the computer so that the Field Examiner has everything that he would need to refer to or use available to him.  (Belluso Dep., p. 52).  The Field Examiner performs his work following prescribed procedures, and must follow specific procedures.  Decisions are made by another party.  (30(b)(6) Deposition/Susan Moshier, p. 83).  Because Field Examiners fall squarely within this description, by the Bank's own testimony, Field Examiners cannot be found to use independent discretion and judgment.  The Bank's own testimony is that the type of work and the way the Field Examiners perform their work means that their work is non-exempt.  Id., at 82.

**4. Defendant Cannot Prove that the Field Examiners Exercised Independent Discretion and Judgment Because Field Examiners Do Not Have Authority to Make an Independent Choice, Free from Immediate Direction or Supervision.**

To exercise discretion and independent judgment implies that the employee has the authority to make an independent choice, free from immediate direction or supervision.  29 C.F.R. § 541.202.  Yet, Field Examiners only make the "low-level decisions" regarding how to handle the tests.  They do not make choices about who, what, when, where or how they perform examinations.  They speak with the Assistant Manager every day, and the Client Manager sometimes twice a day while performing the examinations.  (30(b)(6) Dep./Laura Hall, pp. 111, 112).  The Client Manager tells the FE what tests to perform, provides a scope sheet and a template with the tests.  (30(b)(6) Dep./Hall, pp. 134-36).  The FE must perform the tests outlined in the scope sheet, and cannot waive any of the Exam steps requested.  (30(b)(6) Dep./Hall, pp. 127-28).   During the exam, Field Examiners examine the collateral to see if it deviates from the principles, and then makes a decision about what follow up steps to take, such as talk to the client or get more information.  (30(b)(6) Dep./Hall, p. 130).  But, how to proceed and what to discuss and how to word things with clients are "low-level decisions."  (30(b)(6) Dep./Hall, p. 187, ln 13-18).

The regulations provide further guidance with a list of factors to consider when determining whether "discretion and independent judgment might apply in a particular situation.  29 C.F.R. § 541.202 (b).  As described in the Statement of

Facts and the 30(b)(6) Deposition/Hall, pp. 170-180 and Belluso Dep., pp. 109-111, none of these factors apply here.

Despite the admissions of the Bank, Defendant suggests that the Field Examiners exercised such discretion and judgment when they conducted reviews of customers' data and then created a report to give to their supervisors that outlined their findings and suggestions. (Def.'s MSJ Brief, p. 19). These same arguments were just addressed in <u>Fenton v. Farmers Ins. Exchange,</u> 2009 WL 3164772 (D.Minn. Sept. 29, 2009) (slip copy) (copy attached as Exhibit), a case with a strikingly similar fact pattern. Plaintiffs were FIE's special investigators who investigated the factual basis for the subscribers' insurance claims. The claims investigation begins with the claims representatives, who work in a different department. The claims investigator uses a shared database to flag claims to a unit staffed by the plaintiffs. Managers in the unit then assign the claims to specific investigators. After receiving the claim, the investigator contacts the claims representative who referred the claim, considers the issues and attempts to develop a plan to investigate the issues. Although they make suggestions in the first meeting, the investigator does not reshape the scope of the investigation without first getting approval of the claims representative or their supervisor. The final decision on the file is made by supervisors or claims representatives.

Investigators take photographs of relevant material, retrieve police or fire reports, and interview claimants and witnesses. When the plaintiffs encounter new leads in the course of their investigations, they not pursue those leads without permission of the claims representative or supervisor. Once complete, the investigator contacts the claims representative to determine if the representative wants a further investigation. Once approved for closing, the investigator has to submit an exhaustive list of research material, a list of all completed tasks, *a report of any inconsistencies, discrepancies and/or significant findings*, and a complete summary of the entire investigation. The investigations are their primary job duty, and they are also sometimes to identify fraud indicators. Like Plaintiffs here, the specific criteria for job performance are detailed and provided in a performance evaluation format. Importantly, the investigators' purpose is to provide factual information that allows Claims Professionals to make good decisions, not tell them what decision to make or provide conjecture on what really happened. Like the Field Examiners, the plaintiffs are closer to those of investigators or inspectors, who are generally not exempt. Nor does planning one's workload, prioritizing the pursuit of particular leads, assessing whether the leads have provided information that requires further investigation, determining what documents to review or similar decisions constitute exercising discretion and independent judgment with respect to

matters of significance. (internal citations omitted). Like the Field Examiners, the investigators' role is simply to gather facts and present them for someone else to analyze. They have no authority to determine whether a claim is covered or whether to negotiate a settlement, just as a Field Examiner has no authority to grant, modify, continue or stop a loan. Just as the investigators are non-exempt because they are limited to applying well-established techniques, this Court should also find that Field Examiners are non-exempt. Id., p. 7.

Defendant's position on this prong is also untenable. The cases it cites, Palacio v. Progressive Ins. Co., 244 F.Supp. 2d 1040 (C.D.Cal.2002), Whalen v. J. P. Morgan Chase & Co., 569 F. Supp. 2d 327 (W.D.N.Y. 2008), Marting v. Crawford & Co., 2006 WL 681060 (N.D. Ill. Mar. 14, 2006) and Roe-Midgett v. CC Servs., Inc., 2006 WL 839443 (S.D. Ill. Mar. 29, 2006) predominantly center on claims adjusters, who are specifically exempted from overtime in 29 C.F.R. §541.203(a) if the elements of the regulation are met. These positions all have in common that the positions deal with the operations side of the business and the individuals have the ability to bind their corporations in financial matters, unlike here.

Nor is Piscione v. Ernst & Young, L.L.P., 171 F.3d 527 (7th Cir. 1999) instructive in this case. Piscione was a consultant in Ernst & Young's Human

Resources Consulting Group where he worked in the defined benefit plans and defined contribution plans practice groups.  Id. at 530.  The court cited several critical factors that led it to conclude that Piscione's position fell within the administrative exemption:  1) he helped to improve client services by making changes to Ernst & Young policies and procedures; 2) he acted as a supervisor to several employees; and 3) he was responsible for several clients as their point of contact without supervision.  Id. at 536-37.  Shaw did not change the Bank's policies and procedures, he did not supervise employees, and he was not responsible for the customers.  (Belluso Dep., pp. 109-111; Hall Dep., pp. 170-80).

**5. Defendant Cannot Prove that the Plaintiff Was Exempt Because He Is Covered Under Two Separate Regulations That Show That the Work Field Examiners Do Is Non-Exempt, and the Field Examiners Do Not Meet Any of the Factors the DOL Sets Out as Factors to Consider.**

Two regulations generally preclude employees performing duties similar to those performed by Field Examiners from exemption from the FLSA's overtime provisions.  The first, 29 C.F.R. § 541.203(h), provides that employees usually called examiners generally do not meet the requirements for the administrative exemption because such employees usually perform work involving the comparison of products with established standards which are frequently catalogued.  The written standards may become unnecessary because the employee

has acquired sufficient knowledge; however, memory for a manual of standards does not convert the character of the work performed to exempt work.    Each of these factors applies and has been set out in full in other parts of this brief. Additionally, 29 C.F.R. § 541.203(g) provides that ordinary inspection work does not meet the duties test.   As here, inspectors perform specialized work along standardized lines involving well established techniques and procedures which may have been catalogued and described in manuals or other sources.   Such inspectors rely on techniques and skills acquired by special training or experience. They have leeway in the performance of their work, as here, but only within closely prescribed limits.

## V.    <u>CONCLUSION</u>

Two simple and straightforward facts call for a denial of Defendant's motion.   First, the Bank admitted that the Field Examiner position was overtime eligible and explained the basis for it.   Second, there was no changes to the duties or responsibilities of the Field Examiner position before or after the reclassification.   The Defendant has attempted to cloud the analysis of a very straightforward fact pattern by arguing that the positions are somehow exempt in light of its own determination and testimony that the position is non-exempt.

Because these arguments cannot be supported, particularly at summary judgment,

Defendant's Motion should be denied.

    Respectfully submitted, this 7th day of October, 2009.

<u>s/Amanda A. Farahany</u>
Amanda A. Farahany
Georgia Bar No. 646135
Eleanor Mixon Attwood
Georgia Bar No. 514014

BARRETT & FARAHANY, LLP
1401 Peachtree Street
Suite 101
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AARON SHAW, ET AL, | ) | |
| | ) | Civil Action No. |
|    Plaintiffs, | ) | |
| | ) | 1-08-CV-2819 |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Elaine Rogers Walsh
Theresia Moser
Joy Marie Hodge
Jones Day
1420 Peachtree Street NE
Suite 800
Atlanta, GA  30309-3053

This  7th   day of October, 2009.

s/Amanda A. Farahany___
Amanda A. Farahany

JURY TRIAL DEMANDED