## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AARON SHAW, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:08-CV-2819-WSD |
| BANK OF AMERICA, N.A., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Rather than examine the full range of job duties and responsibilities that Plaintiff Aaron Shaw ("Plaintiff") admittedly performed as a Field Examiner II ("FE II"), Plaintiff cherry picks snippets of the his managers' testimony in an effort to persuade this Court to somehow limit his admissions. Nevertheless, Plaintiff cannot defeat Defendant Bank of America, N.A.'s ("Defendant" or the "Bank") Motion for Summary Judgment by pointing to selective and immaterial facts when his own undisputed deposition testimony demonstrates that Plaintiff was properly classified as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA").

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I.     Legal Standard For Summary Judgment.**

Contrary to Plaintiff's assertions, a "party cannot defeat summary judgment by pointing to snippets of depositions when the point of every witness's statement" demonstrates the contrary.  <u>Gramenos v. Jewel Co., Inc.</u>, 797 F.2d 432, 436 (7th Cir. 1986); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (finding that opposing party must come forward with "specific facts showing that there is a genuine issue for trial" and "must do more than simply show that there is some metaphysical doubt as to the material facts") (citing Fed. R. Civ. P. 56(e)(2)). Although "[p]lausible inferences must be resolved in favor of the party opposing summary judgment," where the inferences a plaintiff presses upon the court "are not plausible," then granting summary judgment is inappropriate.  <u>Gramenos</u>, 797 F.2d at 436.

**II.    Plaintiff Was Exempt From The Overtime Pay Requirements Of The FLSA.**

Whether an FLSA exemption applies turns on "a careful factual analysis of the *full range of the employee's job duties and responsibilities*."  <u>Mike v. Safeco Ins. Co.</u>, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (emphasis added).  Plaintiff seeks to avoid this analysis of his FE II position by focusing on the Bank's subsequent reclassification of his FE II position from exempt to non-exempt.  However, evidence regarding an employer's internal classification, or subsequent reclassification, of a position is not material in determining whether the employee's job duties satisfied the requirements of an FLSA exemption.

Fields v. AOL Time Warner, Inc., 261 F. Supp. 2d 971, 975 (W.D. Tenn. 2003)

(employer's internal label of employee as non-exempt was not dispositive); see, e.g.,

Ferrell v. Gwinnett County Bd. of Educ., 481 F. Supp. 2d 1338, 1339 n.1, 1342-49 (N.D.

Ga. 2007) (finding employees were properly classified as administratively exempt even

though employer had subsequently reclassified them as non-exempt).

### A.   **Plaintiff Performed Administratively Exempt Work**.

Here, Plaintiff's own admissions demonstrate that he:  (i) performed office or non-

manual work directly related to the general business operations of the Bank; and (ii)

exercised discretion and independent judgment with respect to matters of significance.

See 29 C.F.R. § 541.300(a).

Plaintiff's primary job duties closely align with the job duties performed by

employees in the financial services industry, who the Department of Labor ("DOL")

regulations characterize as "generally meet[ing] the duties requirements for the

administrative exemption if their duties include work such as collecting and analyzing

information regarding the customer's income, assets, investments or debts . . . ." Id.

§ 541.203(b).[1]  Plaintiff admits that his primary job duties included evaluating the

---

[1] Plaintiff cites no legal support for his belief that § 541.203(b) can be utilized only if Defendant can show that Plaintiff performed each and every job duty listed in the regulation.  (Pl.'s Opp'n 14).  In fact, case law indicates quite the opposite.  Whalen v. J.P. Morgan Chase & Co., 569 F. Supp. 2d 327, 331 (W.D.N.Y. 2008) (citing only the "collecting and analyzing information regarding the customer's income, assets, investments or debts" language of § 541.203(b) to support finding that employee

creditworthiness of a customer's pledged collateral by collecting, testing, and analyzing

the customer's fixed assets, income statements, accounts receivable, taxes, cash position,

and accounts payable records, (Pl.'s Dep. 41, 61, 90-91, 235-37), as well as making

recommendations, based on his discretion and independent judgment, as to how to

minimize any risk factors associated with the collateral,[2] (id. 60, 62, 83, 99, 236).

Whalen, 569 F. Supp. 2d at 331.  Not surprisingly, Plaintiff's managers substantiated

his admissions as to these primary job duties.  (Belluso Dep. 42, 77-78; Dendrinos

Dep. 19-20; Hall Dep. 90, 137; Mercier Dep. 44-47.)

### 1.    Directly Related To The Bank's General Business Operations

Although a non-exclusive list, the DOL regulations provide that work in functional

areas such as finance, accounting, and auditing are examples of the type of work that

directly relates to management or general business operations.  29 C.F.R. § 541.201(b).

As an FE II, Plaintiff performed work involving finance, accounting, and auditing as he

tested and analyzed a customer's inventory and financial data, such as fixed assets,

accounts receivable, accounts payable, and income statements.  (Belluso Dep. 77-78;

---

(continued…)

performed administratively exempt job duties); Mezger v. Price CPAs, PLLC, No. 3:08-CV-0163, 2008 WL 2857007, at *2 (M.D. Tenn. July 21, 2008) (same).

[2] Compare Pl.'s Opp'n 23-24 (claiming Plaintiff performed ordinary inspection work, or the work of an examiner or grader), with Bagwell v. Fla. Broadband, LLC, 385 F. Supp. 2d 1316, 1326 (S.D. Fla. 2005) (plaintiffs did not perform ordinary inspection work, 29 C.F.R. § 541.202(g), because they exercised discretion and independent judgment), and McAllister v. Transam. Occidental Life Ins. Co., 325 F.3d 997, 1002 (8th Cir. 2003) (same analysis as to work of examiners or graders, 29 C.F.R. § 541.202(h)).

Dendrinos Dep. 8-10, 19-20; Hall Dep. 32, 58-59, 77-78, 108-09, 141; Mercier Dep. 44-47.)  Moreover, an FE II's job duties ultimately are designed to "reduce risk to the Bank of losses which directly impact [the Bank's] bottom line."  (Hall Dep. 185; <u>accord</u> Pl. Dep. 60, 62, 83, 99, 236.)

Plaintiff's work directly related to the overall business operation of the Bank of America Business Capital ("BABC") Asset-Based Lending Group, which is to extend and adjust loans and credit lines backed by collateral; as part of this Group, Plaintiff admits that his most important job duty was evaluating the creditworthiness of a customer's collateral in order to make recommendations as to how to mitigate any risk to the Bank.[3] (Pl. Dep. 99-100, 241); <u>Whalen</u>, 569 F. Supp. 2d at 331 (finding credit analyst performed work directly related to employer's general business operations where his primary duty was to analyze a borrower's financial information and evaluate the borrower's creditworthiness).

Although Plaintiff was responsible for analysis of risk associated with the Bank's asset-based loans, (Pl. Dep. 99-100, 241), he "strains to characterize" his role as one of "mere production," <u>Whalen</u>, 569 F. Supp. 2d at 331 (rejecting argument that exempt credit analyst was responsible for developing or selling the bank's loan products to its customers

---

[3] Testimony of the Bank's Field Exam Managers ("Managers") further confirms that of primary importance in the FE II position is the evaluation of the creditworthiness of a customer's collateral in order to provide recommendations as to how minimize any risks to the Bank.  (<u>See</u> Belluso Dep. 9, 77-81; Dendrinos Dep. 8-10, 19, 36; Hall Dep. 32, 58-59, 62, 93, 108-09, 174, 185, 187; Mercier Dep. 61, 101, 107.)

ATI-2392486v3

and that the crux of his duties was "not the slavish manufacture of 'credit products' on some theoretical assembly line").  However, Plaintiff simply cannot point to any record evidence showing that his primary duty was actually producing asset-based loans.  <u>Cooke v. Gen. Dynamics Corp.</u>, 993 F. Supp. 56, 61 (D. Conn. 1997) ("[T]he administrative/production dichotomy focuses not on whether an employee worked for an enterprise engaged in production activity, but whether the employee's primary duty was producing the product in question."); <u>accord</u> <u>Edwards v. Audubon Ins. Group</u>, No. 3:02-CV-1618-WS, 2004 WL 3119911, at *5 (S.D. Miss. Aug 31, 2004) ("[Plaintiff's] assertion – that an insurance company's products are its policies; that he was employed by an insurance company; and that, therefore, he was a 'production' worker – must be rejected.").

### 2.    Independent Judgment And Discretion

Employees exercise discretion and independent when they make recommendations after comparing and considering possible courses of conduct.  29 C.F.R. § 541.202.  For example, one district court has found that a credit analyst/underwriter position used independent judgment and discretion where the employee's primary job duty included "evaluat[ing] the creditworthiness of [the bank's] customers applying for loans and lines of credit."  <u>Whalen</u>, 569 F. Supp. 2d at 329.  Similarly, Plaintiff's primary job duty[4] is to

---

[4] Plaintiff asserts in his Opposition that he made only "low-level" decisions.  (Pl.'s Opp'n 16.)  In doing so, he ignores the express testimony of the Ms. Hall that these "low-level decisions" were separate from, and in addition to, the other decisions she had previously described.  (Hall Dep. 187.)  As a result, these collateral tasks do not overcome Plaintiff's admitted primary job duties.  <u>See</u> <u>Rutlin v. Prime Succession, Inc.</u>, 220 F.3d 737,

conduct field examinations in which he evaluates the creditworthiness of the collateral pledged by the Bank's asset-based lending customers.  (Hall Dep. 174; Mercier Dep. 107.)

The Whalen court also held that in evaluating customers' creditworthiness, the credit analyst used his independent judgment to analyze documents concerning the customers' finances and credit histories and make determinations, "pursuant to certain written [bank] policies and guidelines, as to whether the collateral was sufficient to offset the financial risk" to the bank.  569 F. Supp. 2d at 329.  Likewise, to evaluate the creditworthiness of a customer's collateral, an FE II must review, test, and analyze the customer's inventory, as well as various financial records and data of the customer, including their accounts receivable, taxes, fixed assets, cash position, and accounts payable records.  (Belluso Dep. 77-78; Dendrinos Dep. 19-20; Mercier Dep. 44-47.)  Furthermore, Plaintiff was required to use independent judgment and discretion to analyze and evaluate why discrepancies occur.  (Pl. Dep. 235-37); see Whalen, 569 F. Supp. 2d at 332 (finding a credit analyst "used independent judgment to assess loan files and evaluate the reasons offered by customers for any discrepancies or 'derogatory credit items'").

### i.     Plaintiff's Recommendations

Not only was Plaintiff required to make recommendations using his exercise

---

(continued…)

742 (6th Cir. 2000) (finding the fact that an employee "performed collateral tasks, even if those tasks took more time than his primary duties," did not change the fact that his primary duties – those "that were of principal importance to the employer" – rendered him an exempt employee).

ATI-2392486v3

discretion and independent judgment, but these recommendations were the *most important* function of his job as an FE II, (Pl. Dep. 99).  See 29 C.F.R. § 202(b) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.").  It is immaterial that Plaintiff's recommendations may have been "reviewed at a higher level."  Id. ("[T]he term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."); accord Whalen, 569 F. Supp. 2d at 333 (concluding that the work performed by trainee credit analyst, who had no authority to bind the bank but was "empowered only to make recommendations," still required the exercise independent judgment and discretion "regardless of whether he had attained full authority to make decisions that were binding" on the bank).

Plaintiff's admissions highlight the wide range of recommendations he was required to make as an FE II:

- "You would recommend in your report that certain items might be excluded from the amount the bank could lend on, correct?  A.  Correct."  (Id. at 62.)
- "[B]ased upon your review and analysis of what was in the field, you would make a recommendation as to whether a test should be performed, correct?  A.  Correct. . . . [And] if you found additional ineligibles, you would recommend that the reserves or the amount loaned upon would be adjusted, correct? . . .  A.  Correct."  (Id. at 73, 76.)
- "[A]s a field examiner, you're charged with going out to investigate whether there is an ineligible that is not being reported, correct?  A.  That's correct.  Q.  And you would make recommendations as to the reserves?  A.  That's correct."  (Id. at 99-100.)
- "So you were required to determine why discrepancies existed?  A.  Yes.  Q.  And

you were required to make appropriate recommendations based on those discrepancies, correct?  A.  Correct."  (Id. at 236.)[5]

Thus, while Plaintiff may not have had the ultimate authority to determine whether the BABC Asset-Based Lending Group should extend or adjust a loan or credit line, his job duties indisputably still required the use of discretion and independent judgment to make recommendations regarding the risk factors associated with the customer's collateral and how to minimize these risks in order to mitigate any loss to the Bank.  (Pl. Dep. 99-100, 218; Belluso Dep. 8-12, 19-20, 77-81; Dendrinos Dep. 8-10, 19; Hall Dep. 32, 58-59, 62, 108-09, 174.)

## ii.   Plaintiff's Use Of Detailed Manual And Guidelines

Plaintiff's use of the Bank's Field Exam Manual ("Manual") and Field Exam Template ("Template") does not contradict the fact that Plaintiff's FE II position required the exercise of independent judgment and discretion.  "Just because [an employee] was required to follow detailed manuals does not mean she did not exercise discretion and independent judgment."  McAllister, 325 F.3d at 1001.  Moreover, "[t]he use of manuals,

---

[5] The requirement that Plaintiff make recommendations based on his analysis clearly distinguishes his role as an FE II from that of the special insurance investigators at issue in Fenton v. Farmers Ins. Exchange, No. 07-4864 (JRT/FLN), 2009 WL 3164772, at *7 (D. Minn. Sept. 29, 2009).  (Contra Pl.'s Opp'n 20-22.)  Unlike the work Plaintiff admittedly performed in his FE II role, Fenton special insurance investigators (i) "merely gather[ed] facts" for claims representatives, and (ii) were "formally barred from presenting their opinions about how to handle claims in their written reports."  2009 WL 3164772, at *7. These two factors, which are directly opposite to Plaintiff's requirements as an FE II, formed the crux of the district court's conclusion that the special insurance investigators were not administratively exempt.  Id.

guidelines or other established procedures containing or relating to . . . financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption [under the FLSA]." 29 C.F.R. § 541.704.

As demonstrated by Plaintiff's own admissions, the Manual and Template were simply reference tools; Plaintiff was still expected to use his judgment and discretion both when conducting field examinations, (Pl. Dep. 237),[6] and also when analyzing and

---

[6] The testimony of the Bank's Managers supports Plaintiff's admission:

- "There is a manual that they use as a reference point to start with.  However, the additional testing and information that they would need would not be spelled out in a book or in a reference guide.  That would be determined by [an FE IIs] using their professional judgment." (Dendrinos Dep. 23.)  FE IIs "use [the Template] as a tool to help determine and make judgment decisions on the validity of the collateral, the ineligibles, multiple testing that would require  additional thought processes to determine the actual collateral values that we would lend against." (Id. 10.)

- "I will tell you, we used the manual as a reference tool, basically, as a guide, given so many things are unique with every individual exam. . . .  It's a reference guide and a tool for assisting in doing the field exams." (Mercier Dep. 93, 111.)

- "The Manual is kind of a nice overview of what our different steps are and why we do them, but it – it definitely cannot anticipate all the potential results from those tests. . . .  It doesn't really go so far as to tell you what to do, because there's . . . too many possible ways and it's too customer specific for that to all be in the – in the Manual. . . . At some point, you really have to use your own judgment and your – your background to determine what the next step is." (Hall Dep. 155-56, 184.) With respect to the Template, "we don't want our Examiners spending a lot of time doing calculations.  We want them to spend their time doing analysis." (Id. 136.)

- "They can't take [the Manual] and just go do an exam following this process. . . . But the analysis part that is inherent in this and the conduct of the field exam is not explicitly laid out so that you could just say, okay, I'm going to take this document

interpreting the results of the examinations, (Dendrinos Dep. 10; Hall Dep. 134, 137).
Whalen, 569 F. Supp. 2d at 332 (concluding a detailed manual that guided the calculation of credit risk scores, which influenced the outcome of employees' decisions, was not dispositive where testimony showed that the manual contained gray areas within which employees were still expected to exercise their own judgment); Havey v. Homebound Mortg., Inc., No. 03-CV-313, 2005 WL 1719061, at * 7 (D. Vt. July 21, 2005) (automated program that guided decision-making process and directed loan approval for underwriters does not preclude finding of independent judgment and discretion); Edwards, 2004 WL 3119911, at * 7 (same).

Furthermore, both the Manual and the Template require an understanding of various accounting terms, rules, and principles, which in turn, requires specialized training and education in accounting.  (Pl.'s Dep. Ex. 9); see 29 C.F.R. § 541.704.  Indeed, Plaintiff not only admitted that he had acquired knowledge as to such terms, rules, and principles through the specialized training and education that he received as part of his undergraduate degree in accounting, (Pl. Dep. 120-26), but also that an FE II must understand both the principles of accounting, as well as the objective of an asset-based lending field examination, in order to utilize the "very technical" Template tool, (id. 74, 121, Ex. 6;

---

(continued…)

and go do the exam and I'll be fine. . . . [An FE II must] [d]evelop[] that sixth sense of when something doesn't look quite right."  (Belluso Dep. 41, 125-26.)

ATI-2392486v3

Mercier Dep. 34-35).

### iii.    Matters Of Significance

Finally, Plaintiff's own testimony shows that his FE II position required the exercise of independent judgment and discretion with respect to matters of significance.  "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: . . . whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business."  29 C.F.R. § 202(b); accord Whalen, 569 F. Supp. 2d at 332 (finding where a credit analyst's recommendations involved over two-and-a-half billion dollars in loans, "and thus over two-and-a-half billion dollars of potential risk" for the bank, he exercised independent judgment and discretion related to matters of significance to the bank).

The overall business operation of the BABC Asset-Based Lending Group is extending and adjusting loans and credit lines that are secured by a customer's collateral – the very assets (receivables and inventory) that Plaintiff evaluated in field examinations to provide the Bank with recommendations as to the creditworthiness of a customer's collateral.  (Pl.'s Dep. 61, 99-100, 218; Belluso Dep. 9; Mercier Dep. 54, 107.)  Thus, Plaintiff's recommendation provided a substantial aspect of the due diligence that went into BABC's business operation of extending or adjusting loans and credit lines of

anywhere between three million to over a billion dollars, and thus over a billion dollars of

potential risk for the Bank.  (Pl.'s Dep. 241; Dendrinos Dep. 36; Hall Dep. 94.)

**B.    Plaintiff's Job Requirements Satisfied The Professional Exemption.**

The undisputed record evidence shows that in his role as an FE II, Plaintiff

performed work that required knowledge customarily acquired by a prolonged course of

specialized intellectual instruction.  See 29 C.F.R. § 541.300(a).[7]  Even in the light most

favorable to Plaintiff, the only reasonable inference that can be drawn from the undisputed

testimony of both Plaintiff, (see supra p. 11), and the Managers, is that an individual

cannot function in the FE II job without education or significant experience in accounting

or finance:[8]

- "We look for people who have either worked in accounting or have been schooled in accounting . . . .   Q.  How about have you had the occasion to recommend for hiring somebody who . . . got their college degree, okay, but they didn't have audit

---

[7] But cf. Stevins v. Provident Const. Co., 137 F. App'x 198, 199 (11th Cir. 2005) (finding that an employee's status as a professionally exempt employee was not altered simply because the employee's position did not require a specific and mandatory educational prerequisite, as opposed to advanced, specialized knowledge based on work experience).

[8] Moreover, every single FE II within the Court's conditionally certified class, including Plaintiff, had a degree in accounting at the time of his or her hiring.  (Pl. Dep. 18; Alvarez Dep. 27; McGill Dep. 23; Parish Dep. 17; Clapp Decl. ¶ 4; Maloney Decl. ¶ 3; Mirza Decl. ¶ 4; Edwards Decl. Attachs. A-D); see also 29 C.F.R. § 541.301(d) ("The best prima facie evidence that an employee meets [the "customarily acquired by a prolonged course of specialized instruction"] requirement is possession of the appropriate academic degree.").

The Declaration of Sheila Edwards is attached behind Tab 7 of the Appendix to Reply Brief in Further Support of Defendant's Motion for Summary Judgment ("Defendant's Appendix").

experience in banking and finance or accounting?  They didn't have an accounting background?  A.  No."  (Belluso Dep. 42, 45.)

- "We would look for an accounting degree or an equivalent in finance or business with an accounting emphasis.  We would also look for people that have previous accounting, hopefully field exam experience, if possible . . . ."  (Dendrinos Dep. 25-26.)

- "[I]ndividuals without an accounting background [or] degree do not thrive in our environment and are not typically capable of performing Field Exams at the level that's required.  . . . [T]here have been times where we have hired people with Finance degrees if they had work experience as an Auditor, and our experience has been that they typically do not perform as well."  (Hall Dep. 38-39.)

- "We definitely have to be an accounting degree.  . . . [W]e may have hired someone without an accounting degree, but they would have had significant . . . finance-related . . . background."  (Mercier Dep. 28.)

Not surprisingly, at the time Plaintiff was hired as an FE II, he had a bachelor of science degree in accounting, substantial accounting-related coursework, and twelve years of previous work experience as an auditor, senior auditor, and assistant corporate controller. (Pl. Dep. 18-19, Ex. 2.)

Nevertheless, Plaintiff attempts to convince this Court to make implausible inferences otherwise, given that his arguments rely on inaccurate and inadmissible testimony.[9]  (See Pl.'s Opp'n 7.)  Notably, Plaintiff's testimony that some field examiners

---

[9] Specifically, the deposition testimony of Ms. Belluso and Ms. Hall expressly contradicts Plaintiff's assertions.  (Compare Pl.'s Opp'n 7, with Belluso Dep. 45 (testifying that she would never hire an FE II who had a college degree without accounting background as it "would be too much to overcome"), and Hall Dep. 38 ("[I]ndividuals without an accounting background [or] degree do not thrive in our environment and are not typically capable of performing Field Exams at the level that's required.").)

Moreover, Plaintiff cannot show that his testimony as to other field examiners' educational backgrounds was based upon his personal knowledge, (see Def.'s Resps. to

do not have a college degree is based upon his identification of two individuals, who not only are employed as Senior Field Examiners, but also *who in fact had college degrees*, as well as prior work experience in accounting and finance. (Dendrinos Decl. II ¶ 4.)[10]

Finally, although Plaintiff asserts that failing to mention the educational requirements in the job description precludes application of the professional exemption, Plaintiff is wrong. For example, similar to the Bank's written job summary of the FE II position, the job description of a credit union examiner in Corrigan v. United States, 68 Fed. Cl. 589, 595 (Fed. Cl. 2005),[11] contained no specific educational requirements. Nevertheless, the district court found that the examiner job required the specialized education and practical experience contemplated by the professional exemption, because the examiner had degrees in business, substantial coursework in accounting and finance, and prior work experience as a financial consultant, accountant, and senior auditor. Id.

---

(continued…)

Pl.'s Statement of Material Facts Presenting Genuine Issues for Trial, Pl.'s Fact No. 19); nor can he establish that Ms. Moshier's testimony, which was not even within the scope of her designated 30(b)(6) topics, was based on her personal knowledge of the day-to-day job duties actually performed by an FE II, (see id. Pl.'s Fact Nos. 1-2, 6-7, 16, 62). Corwin v. Walt Disney Co., 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.").

[10] The Second Declaration of John Dendrinos ("Dendrinos Decl. II") is attached behind Tab 8 of Defendant's Appendix.

[11] Although Plaintiff summarily disposes of Corrigan as inapplicable, the Office of Personnel Management itself has stated that its requirements for the learned professional exemption, 5 C.F.R. § 551.208, are consistent with those set forth in the DOL's learned professional exemption, 29 C.F.R. § 541.301. 5 C.F.R. § 551.101(c).

ATI-2392486v3

## CONCLUSION

Based on the reasons set forth in this Reply and in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, the Bank respectfully requests that this Court grant its Motion for Summary in its entirety.

Dated:  October 21, 2009.

Respectfully submitted,

  s/ Elaine Rogers Walsh
Elaine Rogers Walsh
  (Georgia Bar No. 003480)
Theresia M. Moser
  (Georgia Bar No. 526514)
Joy M. Hodge
  (Georgia Bar No. 358621)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330


Attorneys for Defendant

ATI-2392486v3

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing **REPLY BRIEF IN FURTHER**

**SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

complies with the font and point selections approved by the Court in Local Rule

5.1(B).  The foregoing **REPLY BRIEF IN FURTHER SUPPORT OF**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was prepared on a

computer using the Times New Roman font, 14 point.

This 21st day of October, 2009.

 s/ Elaine Rogers Walsh
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AARON SHAW, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:08-CV-2819-WSD |
| BANK OF AMERICA, N.A., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day caused to be served a true and correct

copy of the foregoing **REPLY BRIEF IN FURTHER SUPPORT OF**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** by electronically

filing the same with the Clerk of Court using the CM/ECF system, which will

automatically send e-mail notification of such filing to attorneys of record Amanda

A. Farahany and Eleanor Mixon Attwood.

This 21st day of October, 2009.


　s/ Elaine Rogers Walsh　　　　
Attorney for Defendant

ATI-2392486v3